IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KRISTA JEAN BOARDMAN,

                Plaintiff,

v.                                                OPINION and ORDER

KILOLO KIJAKAZI,                               22-cv-156-jdp
Acting Commissioner of the Social Security
Administration,

                Defendant.

---

Plaintiff Krista Jean Boardman seeks judicial review of an adverse decision of the Commissioner of the Social Security Administration, finding her not disabled under the Social Security Act. Boardman contends that the ALJ's conclusion that Boardman could perform a limited range of sedentary work was not supported by substantial evidence because the ALJ (1) improperly evaluated the medical opinions; and (2) failed to provide sufficient rationale for his conclusions about Boardman's functional limitations. But the ALJ adequately explained how he evaluated the medical opinions and the reasons for finding that Boardman could perform sedentary work with postural and environmental limitations, and his findings are supported by substantial evidence in the record. Accordingly, the court must affirm the commissioner's decision.

BACKGROUND

Boardman applied for supplemental security income on October 11, 2019, at the age of 42. She has a high school education and past relevant work as a cashier. She alleged that she had been disabled since September 8, 2018, from fibromyalgia, asthma, and allergies. After the

local disability agency denied her claim initially and on reconsideration, Boardman requested a hearing, which was held telephonically on July 7, 2021, before ALJ Joseph Jacobson. Boardman appeared with counsel and testified. The ALJ also heard testimony from a vocational expert. On July 27, 2021, the ALJ issued an unfavorable decision, finding Boardman not disabled.

The record before the ALJ contained four medical opinions about Boardman's work capacity: (1) a September 9, 2020, "Fibromyalgia Work Limitations Questionnaire" completed by Shawn Sedgwick, M.D., a primary care physician who saw Boardman four times between May and November, 2020, R. 665–70; (2) a similar questionnaire completed by Kelli Pasch, a nurse practitioner, on March 1, 2021, R. 679–84; (3) a residual functional capacity (RFC) assessment by Dr. Mina Khorshidi, a state agency physician who reviewed Boardman's claim, R. 148–149; and (4) a similar assessment by Dr. Abraham Colb, a state agency physician who reviewed Boardman's claim on January 21, 2020. R. 160–62. Pasch and Sedgwick's answers on the questionnaire were nearly identical. They both concluded that Boardman was capable of sitting for only 30 minutes at a time for a total of about 4 hours a day, with the additional requirement that she would need to walk around for five minutes after a period of sitting for half an hour. Pasch and Sedgwick also indicated that Boardman needed to be able to shift positions at will from sitting, standing, or walking, take unscheduled breaks 2-3 times in an 8-hour day, lift no more than 10 pounds, and use her arms and hands for reaching and grasping only 30 percent of the day. Finally, they both estimated that Boardman would be absent from work more than four times a month because of her impairments.

Dr. Khorshidi, on the other hand, found that Boardman could perform light work, that is, she could lift up to 20 pounds, sit for two hours a day, and stand or walk for six hours a day.

Dr. Colb thought Boardman could handle medium work (lifting/carrying up to 50 pounds occasionally and 25 pounds frequently), but he added that Boardman could only occasionally climb ramps or stairs, should have no concentrated exposure to pulmonary irritants and avoid even moderate exposure to hazards and temperature extremes. Dr. Colb also opined that Boardman required a number of postural limitations, including no more than occasional climbing of ramps, stairs or ladders, and no more than frequent balancing, stooping, kneeling, crouching or crawling. *Id*.

The ALJ addressed all of these opinions in his decision. He found the state agency opinions of Boardman's RFC only "partially persuasive," explaining that he found Dr. Colb's determination that Boardman required postural and environmental limitations to be consistent with the medical record documenting Boardman's history of asthma and increased symptoms with exposure to cold weather. But the ALJ found Dr. Khorshidi and Dr. Colb's opinions of Boardman's exertional abilities to be "overestimated and not supported by the evidence of the claimant's weakness in her lower extremities and decreased range of motion of her upper extremity." R. 30.

The ALJ found unpersuasive the restrictive opinions expressed on the fibromyalgia questionnaires from Pasch and Sedgwick. R. 31. The ALJ explained that the providers had completed the forms after only minimal treatment and interaction with Boardman, and the limitations appeared to be based on Boardman's subjective reports rather than on the objective evidence in the record. The ALJ further observed that Pasch's form appeared to be copied from Dr. Sedgwick's prior form, insofar as the responses were nearly identical. In addition, noted the ALJ, the limitations endorsed by Pasch were not consistent with Boardman's report at her visit with Pasch that month that she was doing quite well overall. R. 31.

The ALJ determined that the medical evidence supported a residual functional capacity for sedentary work (lifting no more than 10 pounds a time and standing or walking for no more than two hours a day) with the following additional restrictions:

- occasionally climbing ramps or stairs;
- occasionally stooping, crouching, or kneeling;
- no moderate exposure to temperature extremes;
- no concentrated exposure to moving machinery, unprotected heights, high humidity, or pulmonary irritants;
- occasionally reaching overhead; and
- no more than frequent handling and fingering.

R. 27. The ALJ found these limitations appropriate to account for Boardman's "history of obesity, fibromyalgia pain, reduced strength in her lower extremities, and decreased range of motion of her upper extremity." R. 30. The ALJ acknowledged that Boardman had completed function reports and testified that she could not sit or stand for more than 30 minutes, became fatigued if she lifted 10 pounds repeatedly, and had mostly "bad" days when she was unable to do much because of fibromyalgia-related pain. R. 28. But he found these statements unsupported by the medical record, which showed that Boardman's symptoms improved with conservative treatment and that she was found on physical examination to have normal muscle strength and range of motion in both her upper and lower extremities, normal gait, and no swelling. R. 28–29.

Relying on vocational expert testimony, the ALJ found that Boardman's limitations prevented her from performing her past relevant work. But he found Boardman was not disabled under the Social Security Act because she was able to perform other jobs existing in

significant numbers in the national economy, namely, telephone solicitor, hand packager, and food/beverage order clerk. R. 31-32.

The Appeals Council denied Boardman's request for review, making ALJ Jacobson's decision the final decision of the commissioner. Boardman then filed this appeal under 42 U.S.C. § 405(g).

ANALYSIS

On appeal, this court's role is to review the ALJ's decision for legal errors and to determine whether the decision is supported by substantial evidence. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). The substantial evidence standard is not high and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. But the ALJ's decision must identify the relevant evidence and build a "logical bridge" between that evidence and the final determination. *Moon v. Colvin*, 763 F.3d 718, 721 (7th Cir. 2014).

Boardman raises two main challenges to the ALJ's decision, both of which attack the ALJ's RFC assessment. First, she argues that the ALJ's RFC assessment was unsupported by the evidence and inadequately explained. Second, she contends that the ALJ's assessment of the medical opinions failed to comply with the commissioner's regulation, 20 C.F.R. § 416.902c. The court addresses these issues in reverse order.

**A. Medical Opinions**

In assessing medical opinion evidence, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20

5

C.F.R. § 416.920c(a). Rather, the ALJ is to consider the following factors when determining the proper weight to apply to the opinion or prior administrative finding: (1) supportability; (2) consistency; (3) the relationship with the claimant, including the length, purpose, and extent of the treatment relationship, the frequency of examinations, and the examining relationship; (4) specialization; and (5) other factors brought to the attention of the Commissioner. 20 C.F.R. § 416.920c(c). The ALJ must consider all of these factors, but he need explain only how he considered supportability and consistency. § 416.920c(b). The court will affirm the ALJ's assignment of weight to various medical opinions if it is supported by substantial evidence. *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021). It can't reweigh the evidence or substitute its judgment for the ALJ's. *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013).

Boardman argues the ALJ erred in his assessment of all of the medical opinions, not just those from her treating providers, Pasch and Dr. Sedgwick, but also those of the state agency physicians. It is unclear why she is challenging the ALJ's assessment of the state agency physicians' opinions. The ALJ *rejected* the state agency physicians' conclusion that Boardman could perform light or medium work, and instead found she was limited to sedentary work with some restrictions on reaching and handling. He also found that she had postural limitations that were slightly greater than Dr. Colb had found. So it is unclear how any error by the ALJ in evaluating the state agency opinions was harmful to Boardman's application. Surely, Boardman is not suggesting the state agency physicians were correct and she can actually perform light or medium work. On reply, Boardman suggests that she is objecting to the ALJ's evaluation of the state agency physicians because the ALJ "chose those opinions over those of treatment providers that saw Boardman in person." Dkt. 12, at 39–40. But again, the ALJ

6

didn't actually do that, as Boardman herself acknowledges. To the contrary, as Boardman argues in her second challenge on appeal, the ALJ *departed* from the state agency physicians when he crafted his own RFC. Reply Br., Dkt. 12, at 15 ("The ALJ found a limitation to sedentary work, occasional overhead reaching, and frequent handling and fingering, all great departures from either Dr. Korshidid [sic] or Dr. Colb."). Because Boardman has failed to present any cogent argument explaining how the ALJ's adoption of a more restrictive RFC hurt her claim, no further evaluation of the state agency physicians' opinions is necessary. *See, e.g., Palmer v. Saul*, 779 F. App'x 394, 398 (7th Cir. 2019) ("It is true that the ALJ said little about the state's non-examining physicians, but . . . the ALJ's RFC findings were more restrictive than the conclusions of those non-examining physicians, and Palmer does not explain how a more restrictive RFC could have negatively affected his claim."); *Karr*, 989 F.3d at 513 (even where ALJ commits legal error, remand not required if ALJ would reach same result on remand); *Patrick C. v. Saul*, No. 20 C 608, 2020 WL 6287370, at *8 (N.D. Ill. Oct. 27, 2020) (describing similar argument as a "head scratcher").

As for the opinions from Pasch and Dr. Sedgwick, the ALJ properly articulated why he found those opinions unpersuasive, in compliance with § 416.920c. As he explained, both providers completed their forms shortly after they began treating Boardman (Dr. Sedgwick after two visits, see R. 700, 723, Pasch, after one, R. 743), and the limitations they endorsed appeared to be based on Boardman's subjective reports instead of objective evidence. An ALJ does not err by discounting a medical opinion because it relied too much on a claimant's subjective complaints. *See Britt v. Berryhill*, 889 F.3d 422, 426-27 (7th Cir. 2018) ("An ALJ can give less than controlling weight to medical opinions based on subjective reports and can even reject a doctor's opinion entirely if it appears based on a claimant's exaggerated subjective

7

allegations."); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (ALJ properly rejected treating physician's opinion based almost entirely on claimant's subjective complaints rather than objective evidence). Such opinions are, by definition, not well-supported. 20 C.F.R. § 416.920c(c)(1) (noting that "[t]he more relevant the *objective medical evidence* and supporting explanations presented by a medical source," the more persuasive the opinion will be) (emphasis added).

Contrary to Boardman's argument, *see* Dkt. 9, at 35-38, the ALJ's finding was supported by the medical records. As Boardman's excerpts show, Dr. Sedgwick's notes included few objective findings and consist largely of a recitation of Boardman's subjective complaints, followed by the doctor's diagnoses. And they make plain that he filled out the form based on what Boardman told him, not on any testing or objective observations. For example, at a visit with Boardman in November 2020, Dr. Sedgwick wrote: "I had filled out [disability] paperwork a little over a month ago and submitted that to her lawyer. We again discuss the fact that she can really only lift about 10 pounds . . . [s]he has a very difficult time even getting up the 6 steps up to her house."). R. 741. Similarly, Pasch's progress note from her one visit with Boardman prior to completing the fibromyalgia questionnaire on her behalf documents no objective abnormalities, but notes Boardman's subjective report that she was having issues getting her disability approved, that her medications were helping, but she was still having pain with lifting and increased activity. R. 745. The ALJ's conclusion that Pasch and Sedgwick's opinions were not well-supported is reasonably supported by the evidence.

Turning to consistency, Boardman says the ALJ's evaluation of this factor was flawed because he did not acknowledge the consistency between Dr. Sedgwick's and Pasch's opinions. But the ALJ did recognize this consistency; as he saw it, it was a factor *undermining* the

8

persuasiveness of the opinions because it appeared Pasch had simply copied Dr. Sedgwick's assessment rather than base it on her own observations. As the ALJ noted, on March 18, 2021, the same month that Pasch issued her opinion, Pasch recorded that in "regards to her physical health, [Boardman] states overall she feels like she is doing well." R. 749. Further, Pasch had seen Boardman only once before she completed the form, and her progress note does not record any physical examination results or other observations—such as gait abnormalities, weakness, loss of range of motion, or loss of sensation—on which her restrictive conclusions about Boardman's abilities might otherwise have been based. So the ALJ did not err in concluding that Pasch's opinions, while facially consistent with Dr. Sedgwick's, appeared to be copied, were unsupported, and were inconsistent with the overall medical evidence. Further, contrary to Boardman's argument, the ALJ did not equate the "feels like she is doing well" comment with an ability to perform full-time work, but reasonably noted the contrast between that statement and the restrictive opinions endorsed by Pasch.

In sum, the ALJ complied with 20 C.F.R. § 416.920c by adequately explaining his findings as to the consistency and supportability of Pasch and Sedgewick's opinions. He was not required to do more. *Bakke v. Kijakazi*, 62 F.4th 1061, n. 4 (7th Cir. 2023) (ALJ need not explain how he accounted for treating relationship under the regulation); *Kaczmarek v. Kijakazi*, No. 21-CV-176-JDP, 2023 WL 2552837, at *3 (W.D. Wis. Mar. 17, 2023) (20 C.F.R. § 416.920c imposes only minimal articulation requirement on ALJs).

B. **Residual Functional Capacity Assessment**

Boardman's remaining argument requires little additional discussion. She argues that the ALJ impermissibly "played doctor" and crafted an RFC "out of nowhere" by departing from the medical opinions and drawing his own conclusions about Boardman's limitations. But the

9

ALJ isn't required to adopt a particular medical opinion to support the RFC. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007). Rather, in assessing a claimant's RFC, the ALJ must "incorporate all of the claimant's limitations supported by the medical record" and provide enough reasoning to allow the court to understand the basis for his conclusions. *See Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021); *Crump v. Saul*, 932 F. 3d 567, 570 (7th Cir. 2019).

The ALJ met his obligations in this case. He explained that in limiting Boardman to sedentary work with additional postural and environmental restrictions, he was accounting for her reduced strength in her lower extremities, her decreased range of motion in her upper extremities, and her history of obesity and fibromyalgia pain. R. 30. Earlier in his decision, the ALJ reviewed Boardman's physical therapy notes, which specifically documented Boardman's reduced strength in her lower extremities and limited range of motion in her upper extremities. R. 29. So Boardman's complaint that the ALJ failed to cite to specific medical evidence to support the RFC is unfounded.

Critically, Boardman does not identify any medical evidence that the ALJ overlooked that would support more severe restrictions. Apart from the unsupported opinions of Pasch and Sedgwick, Boardman points only to her subjective complaints, but that is not enough. *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) ("Subjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence.") (citing 42 U.S.C. § 423(d)(5)(A)); *Karr*, 989 F.3d at 513 (plaintiff, not the ALJ, ultimately "bears the burden of proving that she is disabled" by "identifying any objective evidence in the record corroborating" her allegations); *Sosh v. Saul*, 818 F. App'x 542, 546 (7th Cir. 2020) ("A claimant who does not 'identify medical evidence that would justify further restrictions' is not entitled to remand.") (quoting *Loveless v. Colvin*,

810 F.3d 502, 508 (7th Cir. 2016)). In any case, the ALJ explained why he did not credit Boardman's allegations of total disability: there were minimal findings during objective examinations, her asthma was well-controlled, she reported improvement with conservative treatment for fibromyalgia in 2018, did not follow through with physical therapy in 2020, and her fibromyalgia was noted to be stable in July 2020. Boardman's only specific complaint about the ALJ's credibility assessment is that he didn't mention each and every limitation she reported on one of her function reports. *See* Dkt. 9, at 20. But "an ALJ's credibility findings need not specify which statements were not credible." *Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012). What matters is whether the ALJ's determination was "reasoned and supported." *Id*. at 311(citation omitted). Here, the ALJ's decision, which acknowledged that Boardman reported limitations on her ability to lift, bend, stand, walk, sit, kneel, and climb stairs, demonstrates that he considered all of the evidence that arguably supported a finding of disability. Because his reasons for rejecting that evidence are adequately explained and supported by evidence that a reasonable mind could find adequate, this court must affirm his decision.

ORDER

IT IS ORDERED that Krista Boardman's motion for summary judgment, Dkt. 8, is DENIED. The decision of the Acting Commissioner of Social Security denying Boardman's application for supplemental security income is AFFIRMED. The clerk of court is directed to enter judgment and close this case.

Entered April 28, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge